# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NOVO NORDISK A/S, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-1896 (CKK) |
| | ) | |
| JON W. DUDAS, | ) | Judge Colleen Kollar-Kotelly |
| Under Secretary of Commerce for | ) | |
| Intellectual Property and | ) | ECF |
| Director of the United States Patent | ) | |
| & Trademark Office, | ) | Opposition due August 17, 2007 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION OF NOVO NORDISK A/S
### REGARDING THE SCOPE OF DISCOVERY

In accordance with this Court's July 9, 2007 Scheduling and Procedures Order, plaintiff Novo Nordisk A/S hereby moves this Court to enter an order permitting discovery to proceed before the briefing and decision of any dispositive motions. The grounds for this Motion are set forth in Novo's accompanying Memorandum of Points and Authorities in Support of its Motion Regarding Discovery and Admissibility of Evidence.

Respectfully submitted,

_____
                                /s/
Margaret K. Pfeiffer (D.C. Bar No. 358,723)
Susan Kaufmann Nash (D.C. Bar No. 484088)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805
Tel.: (202) 956-7500
Fax: (202) 956-6330
Counsel for Plaintiff Novo Nordisk A/S

OF COUNSEL:

Robert Schaffer
Samuel S. Woodley
DARBY & DARBY P.C.
805 Third Avenue
New York, New York  10022
Tel.:  (212) 527-7700
Fax:  (212) 527-7701


Dated:  July 25, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NOVO NORDISK A/S, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-1896 (CKK) |
| | ) | |
| JON W. DUDAS, | ) | Judge Colleen Kollar-Kotelly |
| Under Secretary of Commerce for | ) | |
| Intellectual Property and | ) | ECF |
| Director of the United States Patent | ) | |
| & Trademark Office, | ) | Opposition due August 17, 2007 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOVO NORDISK'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION**
**REGARDING DISCOVERY AND ADMISSIBILITY OF EVIDENCE**

Margaret K. Pfeiffer (D.C. Bar No. 358,723)
Susan Kaufmann Nash (D.C. Bar No. 484088)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805
Tel.: (202) 956-7500
Fax: (202) 956-6330

Counsel for Plaintiff Novo Nordisk A/S

OF COUNSEL:

Robert Schaffer
Samuel S. Woodley
DARBY & DARBY P.C.
805 Third Avenue
New York, New York 10022
Tel.: (212) 527-7700
Fax: (212) 527-7701

Dated: July 25, 2007

# TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................2

ARGUMENT ...........................................................................................3

I.    In a Section 145 Action, A Party Is Entitled to Introduce Evidence
      Outside the PTO Record ....................................................................4

II.   There Are Two Narrow Exceptions to the Rule That Evidence Outside
      the PTO Record is Admissible in a Section 145 Action ........................6

      A.    New Issues ...............................................................................7

      B.    Evidence Readily Available to the Applicant But Withheld from
            the PTO ...................................................................................7

III.  Examples of the Evidence Novo Contemplates Offering at Trial .........8

IV.   Novo's Evidence Is Admissible because Neither Exception Applies
      Here .............................................................................................10

      A.    The Evidence Novo Contemplates Offering at Trial Does Not
            Relate to a "New" Issue ..........................................................11

      B.    The Evidence Novo Contemplates Offering at Trial Cannot Be
            Excluded on the Theory that It Was Available but Withheld from
            the PTO ..................................................................................11

V.    *Hyatt* v. *Dudas* Cannot Overcome the Federal Circuit's Clear Mandate
      that a Party in a Section 145 Action Is Entitled to Introduce Additional
      Evidence ......................................................................................12

VI.   The Discovery Rules of the Federal Rules of Civil Procedure Apply
      Fully to Section 145 Actions and Discovery Related to Novo's
      Contemplated Additional Evidence is Proper .....................................13

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Page

*Brand* v. *Miller,*
    487 F.3d 862 (Fed. Cir. 2007)........................................................................8

*Burlington Indus.* v. *Quigg,*
    822 F.2d 1581 (Fed. Cir. 1987)...............................................................5, 6, 7

*Butterworth* v. *United States ex rel. Hoe,*
    112 U.S. 50 (1884)........................................................................................5

*Conservolite* v. *Widmayer,*
    21 F.3d 1098 (Fed. Cir. 1994)...................................................................7, 13

*DeSeversky* v. *Brenner,*
    424 F.2d 857 (D.C. Cir. 1970) ......................................................................7

*Dickinson* v. *Zurko,*
    527 U.S. 150 (1999) ..................................................................................4, 5

*Flex-Rest LLC* v. *Steelcas*e, *Inc.,*
    455 F.3d 1351 (Fed. Cir. 2006)....................................................................2

*Fregeau* v. *Mossinghoff,*
    776 F.2d 1034 (Fed. Cir. 1985)..................................................................4, 5

*Gould* v. *Quigg,*
    822 F.2d 1074 (Fed. Cir. 1987)..................................................................5, 6

*Graham* v. *Deere,*
    383 U.S. 1 (1966).......................................................................................10

*Hirschfield* v. *Banner,*
    462 F. Supp. 135 (D.D.C. 1978) .................................................................11

*Hyatt* v. *Dudas,*
    No. 03-0901 (D.D.C. Sept. 30, 2006) ...............................................3, 12, 13

*Hyatt* v. *Dudas,*
    No. 04-01802 (D.D.C. Aug. 17, 2005) ..................................................... 13-14

*In re Newman,*
    763 F.2d 407 (Fed. Cir. 1985).....................................................................14

*In re Waymouth,*
    486 F.2d 1058 (C.C.P.A. 1973) ...................................................................12

*Killian* v. *Watson*,
121 U.S.P.Q. 507 (D.D.C. 1958) ...........................................................................12

*KSR* v. *Teleflex Inc.*,
127 S. Ct. 1727 (2006) ..........................................................................................10

*MacKay* v. *Quigg*,
641 F. Supp. 567 (D.D.C. 1986) .................................................................4, 7, 11

*Mazzari* v. *Rogan*,
323 F.3d 1000 (Fed. Cir. 2003)............................................................. 4, 6, 7, 14

*Monsanto Co.* v. *Kamp*,
269 F. Supp. 818 (D.D.C. 1967) .............................................................................4

*Nat'l Semiconductor Corp.* v. *Ramtron Int'l Corp.*,
265 F. Supp. 2d 71 (D.D.C. 2003) ..................................................................11, 13

*Titanium Metal Corp.* v. *Banner*,
778 F.2d 775 (Fed. Cir. 1985)..................................................................................6

*Winner Int'l Royalty Corp.* v. *Wang*,
202 F.3d 1340 (Fed. Cir. 2000)................................................................................6

**STATUTES AND RULES**

28 U.S.C. § 1295(a)(4)(c) ...........................................................................................6

35 U.S.C. § 103(a) ......................................................................................................2

35 U.S.C. § 141 ..........................................................................................................4

35 U.S.C. § 145............................................................................................... passim

35 U.S.C. § 146.........................................................................................................13

Fed. R. Civ. P. 1 .......................................................................................................13

Fed. R. Civ. P. 2 .......................................................................................................13

Fed. R. Civ. P. 26 ................................................................................................13, 14

Fed. R. Civ. P. 81 .....................................................................................................13

**OTHER AUTHORITIES**

Adelman, *et al.*, Patent Law, Ch. 11 "Claims" (West Group 1998) ....................................2

MPEP §1216.02 ......................................................................................................5, 7

```
                                      )
NOVO NORDISK A/S,                     )
                                      )
              Plaintiff,              )
         v.                           )        Case No: 06-1896 (CKK)
                                      )
JON W. DUDAS,                         )        Judge Colleen Kollar-Kotelly
     Under Secretary of Commerce for )
     Intellectual Property and        )        ECF
     Director of the United States Patent )
     & Trademark Office,              )        Opposition due August 17, 2007
                                      )
              Defendant.              )
                                      )
```

**NOVO NORDISK'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION
<u>REGARDING DISCOVERY AND ADMISSIBILITY OF EVIDENCE</u>**

In accordance with this Court's July 9, 2007 Scheduling and Procedures Order in this civil action brought pursuant to 35 U.S.C. § 145 ("Section 145"), plaintiff Novo Nordisk A/S ("Novo") requests that the Court schedule discovery to begin promptly, and here sets out the legal basis for its right to conduct discovery, as well as a description of the discovery it seeks.

The Patent and Trademark Office ("PTO") mistakenly contends that no discovery is appropriate because no discoverable evidence is admissible in a Section 145 action. Joint Report on Conference of Parties for Local Rule 16.3 Meeting, filed June 21, 2007, at 8 ("Joint Report"). The general rule—subject only to two narrow exceptions—is that a party in a Section 145 action is not confined to the record before the PTO, and may introduce at trial additional evidence it obtains through discovery. Because the PTO has

yet to inform Novo of the arguments and evidence on which it intends to rely,[1] Novo cannot now set forth all the evidence that it will need to introduce at trial. Nevertheless, in response to the Court's request, we set forth below specific evidence, primarily expert testimony, that Novo presently contemplates offering at trial. This evidence pertains in large measure to erroneous factual assumptions of the Board of Patent Appeals and Interferences to which Novo had no opportunity to respond.

## BACKGROUND

The invention Novo seeks to patent[2] is a method for treating diabetes through inhalation of dry insulin powder in aerosol form. The claimed method delivers a controlled, reproducible dose of insulin. The PTO Examiner assigned to examine Novo's patent application issued a Final Office Action in April 2003 rejecting all of the claims in the application as unpatentable.[3] The Examiner concluded that all of the elements or limitations of the claims would have been "obvious"[4] to a person having ordinary skill by

---

[1] Counsel for the PTO has informally advised counsel for Novo that the PTO expects to rely solely on the PTO record, at least for purposes of bringing its motion for summary judgment. The PTO has not committed to sole reliance on that record, however, and opposes Novo's right to obtain interrogatory responses or admissions regarding the evidence on which the PTO will rely in defending this action.

[2] The application is Serial No. 09/848,774, entitled "A Method of Treating Diabetes Mellitus in a Patient."

[3] "The claims are the most significant part of the entire United States patent instrument. It is the [numbered] claims [found at the end of the patent] themselves that set forth the proprietary technological rights possessed by the patentee." Adelman, *et al.*, Patent Law, Ch. 11 "Claims," at 633 (West Group 1998).

[4] 35 U.S.C. § 103(a) sets out the statutory basis for obviousness and states in pertinent part: "A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." "Obviousness is a question of law with underpinning factual findings." *Mazzari* v. *Rogan*, 323 F.3d 1000, 1005 (Fed. Cir. 2003). For an obviousness rejection, the references being combined must teach every element or limitation of the claims. *See, e.g.*, *Flex-Rest LLC* v. *Steelcas*e, *Inc.*, 455 F.3d 1351, 1356 (Fed. Cir. 2006).

combining two publications: a patent publication by Schenk and others[5] ("Schenk"), which describes a specific type of inhaler for administering "medicament" to the lungs' airways and a United States Letters Patent issued to Velasquez and others[6] ("Velasquez"), which describes a way to deliver dry "medicament" via a "flexible sheet material." Final Office Action, App. No. 09/848,774, at 2 ("Final Office Action") (attached as Exhibit 1).

In response to the Examiner's grounds for rejecting the claims, Novo amended its application and appealed the rejection to the Board of Patent Appeals and Interferences ("Board"). In September 2006, the Board agreed that the claims were obvious in light of Schenk and Velasquez (Decision on Appeal, Board of Patent Appeals and Interferences, Appeal No. 2006-1762, App. No. 09/848,774, at 3 ("Board Decision") (attached as Exhibit 2)), but it did so on the basis of new—and erroneous—findings of fact.

## ARGUMENT

The general rule is that evidence outside the PTO record is admissible in a Section 145 action. Novo contemplates offering, among other things, evidence that relates to factual errors made by the Board and relied upon for the first time in the Board Decision, rejecting Novo's patent application, to which Novo has had no opportunity to respond. This evidence does not fall within either of the two narrow exceptions to the rule of admissibility, nor may it be excluded based on the erroneous decision in *Hyatt* v. *Dudas*, No. 03-0901 (D.D.C. September 30, 2006) ("*Hyatt* Opinion"). Because the

---

[5] International Patent Publication No. WO 90/07351 (int'l pub. date July 12, 1990).

[6] U.S. Letters Patent No. 5,192,548 (March 9, 1993).

admission of additional evidence outside the PTO record is proper, discovery is also appropriate and should begin immediately.

**I.     In a Section 145 Action, A Party Is Entitled to Introduce Evidence Outside the PTO Record.**

A party who has been denied a patent by the Board has a choice.   The applicant may appeal the Board's decision directly to the Federal Circuit, under 35 U.S.C. § 141, in which case the appeal will be decided solely on the basis of the record in the PTO, s*ee Mazzari* v. *Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003), and will be governed by the standards of review specified in the Administrative Procedure Act. *Dickinson* v. *Zurko*, 527 U.S. 150, 165 (1999); *Mazzari*, 323 F.3d at 1004.   Alternatively, the applicant may file a suit under 35 U.S.C. § 145, which empowers this Court to reverse the Board Decision and "adjudge that the applicant is entitled to receive a patent for his invention." 35 U.S.C. § 145. [7]

A Section 145 action is not a proceeding under the Administrative Procedures Act.   *See Fregeau* v. *Mossinghoff*, 776 F.2d 1034, 1036-37 (Fed. Cir. 1985). It is instead a "hybrid" proceeding that provides for a review of the Board's decision through a trial *de novo*, as well as consideration of the PTO record.   *MacKay* v. *Quigg*, 641 F. Supp. 567, 569 (D.D.C. 1986) (quoting *Monsanto Co*. v. *Kamp*, 269 F. Supp. 818, 822 (D.D.C. 1967)).   As the Federal Circuit itself has stated, in a Section 145 action, the "parties are *entitled* to submit additional evidence" that had not been considered by the

---

[7] 35 U.S.C. § 145 provides in pertinent part that "[a]n applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences . . . may. . . have remedy by civil action against the Commissioner in the United States District Court for the District of Columbia . . . . The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law."

PTO.[8]  *Fregeau*, 776 F.2d at 1037 (emphasis added); *see also Zurko*, 527 U.S. at 164 (the "disappointed applicant" may file a Section 145 action in this Court, and "present to the Court *evidence that the applicant did not present*" to the PTO) (emphasis added); *Gould* v. *Quigg*, 822 F.2d 1074, 1076-77 (Fed. Cir. 1987) (a Section 145 action is the applicant's opportunity to proffer "evidence not presented" to the PTO, which may be directed to the "numerous factual underpinnings" of the legal determinations reached by the PTO).   Indeed the Patent Office itself, in its own Manual of Patent Examining Procedure, recognizes that "[i]n an action under 35 U.S.C. 145, the plaintiff may introduce *evidence not previously presented to the*" PTO.   MPEP § 1216.02 (emphasis added) (attached as Exhibit 3).

A Section 145 action is to be "conducted as a trial . . . in essence . . . to set aside the final decision of the board."   *Fregeau*, 776 F.2d at 1037; *see also Burlington Indus.* v. *Quigg*, 822 F.2d 1581, 1584 (Fed. Cir. 1987) (in Section 145 actions, district court conducts "a full trial of the issues, a resource not available to the PTO").   "The right to a fresh look by a court of general jurisdiction, upon refusal by the Commissioner to grant a patent, has long been established."   *Burlington Indus.*, 822 F.2d at 1584.   Based on the trial record, including additional evidence not before the PTO, the court then determines whether the applicant is entitled to receive a patent based upon how "the facts in the case may appear" to the court.   35 U.S.C. § 145.

---

[8] As Judge Newman stressed in *Fregeau* v. *Mossinghoff*, the congressional intent behind providing district court review of Board decisions refusing a patent has been to give the applicant a "right to build a new record with testimony or evidence *in addition* to that developed before the Patent Office. 776 F.2d at 1040 (emphasis added) (concurring).  The Supreme Court has likewise agreed from earliest days that an action in district court to challenge the denial of a patent "is not a technical appeal . . . confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits."  *Butterworth* v. *United States ex rel. Hoe*, 112 U.S. 50, 61 (1884).

At trial, evidence may include expert testimony,[9] *Burlington Indus.*, 822 F.2d at 1584 (trials under Section 145 "before the district court [partake] of the quality that is available only with the examination and cross-examination of live witnesses"), technical publications, *Gould*, 822 F.2d at 1078, and fact witness testimony, *id.*; *see generally Winner Int'l Royalty Corp.* v. *Wang*, 202 F.3d 1340, 1346 (Fed. Cir. 2000). Not only may an applicant "present additional evidence," it may also "argue the previous evidence afresh, either by simply relying upon the record below or by reinforcing the same evidence through alternative means such as live testimony." *Mazzari*, 323 F.3d at 1004. As the Federal Circuit, the court whose decisions are binding precedent in this action,[10] recognizes, an applicant is entitled—with only two narrow exceptions—to submit additional evidence not considered by the PTO, in a Section 145 action.

## II. There Are Two Narrow Exceptions to the Rule That Evidence Outside the PTO Record is Admissible in a Section 145 Action.

Neither of the two exceptions to the general rule applies here.

---

[9] As the Federal Circuit noted in *Winner International Royalty Corp.* v. *Wang*, 202 F.3d 1340, 1346 (Fed. Cir. 2000), in "the context of a section 145 action in which the Board has conducted an *ex parte* proceeding . . . the admission of live testimony at trial requires the factfinder to make *its own* findings." Citing *Burlington Industries*, the Federal Circuit explained the central importance of both new evidence and district court factfinding in a Section 145 proceeding:

> In its evaluation of the evidence . . . the district court had a powerful advantage over the patent examiner and the Board, an advantage characteristic of section 145 appeals, in that the Court *heard* and *saw witnesses*, testifying under examination and cross-examination, and had the benefit of extensive discussion and argument. *Burlington*, 822 F.2d at 1582.

*Winner Int'l*, 202 F.3d at 1346.

[10] The Federal Circuit's jurisdiction over an appeal from a Section 145 action is set out explicitly in 28 U.S.C. § 1295(a)(4)(c), and its precedent is controlling in this action. *See Titanium Metal Corp.* v. *Banner*, 778 F.2d 775, 778-79 (Fed. Cir. 1985).

### A. New Issues.

The first exception pertains to raising new *issues,* ones not raised before the Examiner and the Board, where the applicant has no good reason—"some reason of justice"—for failing to present that issue to the Patent Office. *DeSeversky* v. *Brenner*, 424 F.2d 857, 858 (D.C. Cir. 1970). This exception is limited to circumstances where the evidence relates solely to a new issue. *See Burlington Indus.*, 822 F.2d at 1584. However, even here, "a district court may exercise its discretion and admit testimony on issues even though they were not raised before the Board." *Conservolite* v. *Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994). Further, this first exception does not preclude evidence affecting new *arguments* relating to issues that were before the PTO, whether raised by the plaintiff or the PTO. *See Mazzari*, 323 F.3d at 1005 ("The PTO presented three additional arguments before the district court."). Fact and expert evidence concerning issues that *were* raised in the PTO is plainly admissible. *See, e.g.*, *MacKay*, 641 F. Supp. at 571 ("plaintiffs may introduce additional evidence to strengthen its prior art argument made in the PTO").

### B. Evidence Readily Available to the Applicant But Withheld from the PTO.

The second exception is where evidence was readily available to the applicant during the PTO proceeding, but which the applicant nevertheless withheld from the PTO. The MPEP provides that "new evidence is not admissible in district court where it was available to the parties but withheld from the U.S. Patent and Trademark Office as a result of fraud, bad faith, or gross negligence." MPEP § 1216.02 (citing *DeSeversky*, 424 F.2d at 858 n.5). *See also Mackay*, 641 F. Supp. at 570 ("evidence shall not be admissible in district court, if it was available to the parties, but was withheld from

the Patent Office as a result of fraud, bad faith, or gross negligence."). This exception plainly does not apply to the evidence Novo will seek to introduce at trial.

### III. Examples of the Evidence Novo Contemplates Offering at Trial.

Novo contemplates offering expert testimony, and possibly inventor and fact witness testimony, that primarily relates to errors made by the Board in the final stage of proceedings before the PTO. These errors include the following:

First, the Board wrongly assumed, without citation to any basis in the record, that "medicament that is inhaled is absorbed into the blood stream by the lungs." Board Decision, at 4.[11] The delivery of local medication to the lung airways that was described in the prior art (*e.g.*, for treatment of bronchial conditions within the lung) differs—though the Board failed to appreciate this fact—from the inventors' novel delivery of systemic drugs, such as insulin, to the alveoli deep within the lungs for absorption into the bloodstream. The Board thus erroneously rejected as "unpersuasive" Novo's arguments that the Schenk and Velasquez references did not render the claims obvious. *Id.* Contrary to the Board's assertion, both Schenk and Velasquez deal with non-systemic medication for localized delivery to and treatment of the lung airways. They do not describe or suggest the administration of systemic medication for absorption into the bloodstream. Novo's expert testimony will address this point, which Novo could not have made in the PTO because the Board's erroneous conclusion came when Novo had no right to respond.

---

[11] *See Brand* v. *Miller*, 487 F.3d 862, 870 (Fed. Cir. 2007) ("Lacking an explanation in the record . . . the Board [erred when it] substituted its own expertise for record evidence.").

Second, the Board erred in concluding that Velasquez taught the amount of insulin needed to be administered to treat diabetes. Board Decision, at 4. Novo's application is directed to an "aerosolized suspension contain[ing] an amount of insulin that is 2-10 times higher than the amount needed to be absorbed in the bloodstream of the patient." The Examiner had rejected as unpatentable this "2-10" limitation with a bald assertion that the amount of insulin needed could be obtained "through mere routine obvious experimentation and observation." Final Office Action, at 3. The Board upheld the Examiner's conclusion that the "2-10" limitation was not patentable, but on new and different grounds from the Examiner's. The Board seized on a passage in Velasquez describing an experiment in which albuterol sulfate was put into the "flexible sheet material" claimed by Velasquez for delivery of the drug to a patient. Board Decision, at 4. This passage states that the "respirable fraction"[12] of the albuterol sulfate that was released from the sheet material ranged between about 10% to 65%. Velasquez, col. 5, ll. 7-15. The Board took the "inverse" of this range, calculating that it "yields a range of 1.54 to 10 times the amount needed to be absorbed," and then noted that the 1.54 to 10 times the amount range "substantially overlaps the claimed range of 2 to 10 times." Board Decision, at 4. Solely based on this calculation, the Board rejected the claimed "2 to 10" limitation. *Id.*

The Board's reasoning and its reliance on Velasquez for this proposition are incorrect as a matter of fact. Novo contemplates introducing expert testimony that the

---

[12] The Velasquez patent defines the respirable fraction as "the percentage of drug which is in particles of aerodynamic diameter of equal to or less than about 6.4 μm." Velasquez, col. 5, ll. 11-13. The Board in its decision did not use the Velasquez definition of "respirable fraction," but applied a definition of its own in evaluating Velasquez as a ground of rejection: "The fraction that will be absorbed relative to the total amount inhaled is referred to in the art as the 'respirable fraction'." Board Decision, at 4. This is also error.

"1.54 to 10 times" calculation relied on by the Board does not pertain to the *amount of insulin* that must be contained in the aerosolized insulin to ensure that the proper amount of insulin is absorbed in the patient's bloodstream, and additionally that the 10% to 65% range was not applicable to a calculation concerning insulin because there are material differences in the properties of albuterol sulfate and insulin.

Third, the Board failed to address the level of ordinary skill in the art, which is a key element in any analysis of the obviousness of an invention. *Graham* v. *Deere*, 383 U.S. 1, 17 (1966) (setting out the obviousness analysis); *KSR* v. *Teleflex Inc.*, 127 S. Ct. 1727, 1729-30 (2006), (reaffirming that *Graham* factors "continue to define the inquiry that controls").   The Examiner had asserted, in his Answer filed before the Board, that one of ordinary skill in the art was a physician.  Examiner's Answer, App. No. 09/848,774, Before the Board of Patent Appeals and Interferences, dated Jan. 25, 2006, at 6-7 ("one of ordinary skill (i.e. a physician since insulin is a prescription medicine)").   Novo, in its Reply Brief, had pointed out that the PTO "incorrectly contends that insulin 'is a prescription medicine' and that one of ordinary skill is therefore a physician."  Reply Brief, App. No. 09/848,774, Before the Board of Patent Appeals and Interferences, dated Feb. 28, 2006, at 4.  The Board never defined "one of ordinary skill in the art," leaving the issue to be tried in this action.

### IV.    Novo's Evidence Is Admissible because Neither Exception Applies Here.

The evidence Novo contemplates introducing comes within neither exception to the general rule that a party in a Section 145 action may introduce evidence outside the record before the PTO.

- 10 -

**A.    The Evidence Novo Contemplates Offering at Trial Does Not Relate to a "New" Issue.**

The evidence Novo is contemplating offering is not on a "new" issue. Whether insulin delivered to the lungs necessarily ends up in the bloodstream was before the PTO. The evidence rebutting the Board's rejection of the "2-10" limitation also does not relate to a new issue, as this ground of rejection was raised. *See Hirschfield* v. *Banner*, 462 F. Supp. 135, 141 (D.D.C. 1978) ("additional evidence is admissible to support contentions advanced in the PTO"); *MacKay*, 641 F. Supp. at 57 (evidence strengthening arguments made to the Board that prior art references did not render invention obvious is admissible). Nor is the proper level of skill in the art "new." *Nat'l Semiconductor Corp.* v. *Ramtron Int'l Corp.*, 265 F. Supp. 2d 71, 75-76 (D.D.C. 2003) (issues were properly before the district court when raised by the parties before the Board but not decided by the Board).

**B.    The Evidence Novo Contemplates Offering at Trial Cannot Be Excluded on the Theory that It Was Available but Withheld from the PTO.**

Novo has retained an expert to provide expert testimony primarily to address the grounds of rejection raised for the first time by the Board Decision. Novo had no opportunity to respond to these grounds, and could not have anticipated that the Board would fill in the record with unsupported and incorrect factual assertions. The Board's assumption that "medicament that is inhaled is absorbed into the bloodstream by the lungs," Board Decision, at 4, was a new and erroneous ground of rejection, as were the new and erroneous grounds for rejecting the claimed "2-10" limitation. Thus, evidence addressing such new grounds of rejection cannot be excluded as available but "withheld" under the second limited exception to admissibility of additional evidence.

- 11 -

*See, e.g.*, *In re Waymouth*, 486 F.2d 1058, 1061 (C.C.P.A. 1973) (in remand to the Board, applicant granted the opportunity to respond to new rejection given by the Board).

> **V.     *Hyatt* v. *Dudas* Cannot Overcome the Federal Circuit's Clear Mandate that a Party in a Section 145 Action Is Entitled to Introduce Additional Evidence.**

Novo understands that the PTO relies on the *Hyatt* Opinion (attached as Exhibit 4) for its proposition that discovery is not appropriate here because any discoverable evidence would not be admissible. That decision, which is on appeal to the Federal Circuit, is not authority for departing from the Federal Circuit's rule permitting the introduction of additional evidence in Section 145 actions. *See, supra,* pp. 4-6.

In *Hyatt*, an inventor appended to his motion for summary judgment in the district court his own declaration in support of patentability. *Hyatt* Opinion, at 2. The PTO argued that the declaration was inadmissible because Hyatt had been negligent in withholding it from the examiner and the Board when the issue to which the evidence pertained was raised before the PTO, and the court agreed. In his motion for reconsideration, Hyatt argued that the court had erred in excluding the declaration. *Id.*

In denying Hyatt's motion for reconsideration, the district court wrongly read *Killian* v. *Watson*, 121 U.S.P.Q. 507 (D.D.C. 1958), as "articulat[ing] the rule as presumptively excluding new evidence, absent a satisfactory explanation from the presenting party." *Hyatt* Opinion, at 4. The court required "some persuasive explanation—and presumably an objectively reasonable explanation, rather than a *mea culpa*" for the evidence to be admissible. *Id.*

This *Hyatt* "presumption" effectively reverses the rule long followed by the Federal Circuit and the Supreme Court that favors additional evidence in Section 145

actions. *See, supra,* pp. 4-6. It expands an exception to the rule—under which an applicant who has withheld certain evidence from the PTO may, in the court's discretion, *see Conservolite,* 21 F.3d at 1102, be precluded from presenting that evidence in the district court—to swallow the rule. These cases are completely contrary to the *Hyatt* Opinion's presumption that additional evidence is suspect and should be barred from trial unless the applicant can make a compelling argument to the contrary. Finally, the *Hyatt* Opinion's presumption ignores the fact that the PTO has the burden of showing that the evidence Novo seeks to admit (i) comes within one of these narrowly drawn exceptions and (ii) should not be admitted through an exercise of the Court's discretion.

## VI.    The Discovery Rules of the Federal Rules of Civil Procedure Apply Fully to Section 145 Actions and Discovery Related to Novo's Contemplated Additional Evidence is Proper.

Discovery should be scheduled to begin promptly. The discovery rules of the Federal Rules of Civil Procedure fully apply to Section 145 actions. *See Nat'l Semiconductor Corp.,* 265 F. Supp. 2d at 73[13]; Fed. R. Civ. P. 1, 2, 81. Since additional evidence can be—is expected to be—introduced, discovery regarding such evidence is no less the norm in Section 145 actions than in any other civil action in federal district court. Furthermore, as in all civil actions, discovery extends to matters and evidence that are not themselves admissible, but need only "appear[] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The PTO is, accordingly, in error in contending that discovery is not available in this action. Indeed, in another Section 145 action in this court, *Hyatt* v.

---

[13]  This case arose under 35 U.S.C. § 146, which provides a procedure parallel to Section 145 appeals from *inter partes* Interference proceedings in the Board of Patent Appeals and Interferences.

*Dudas*, No. 04-01802 (D.D.C.  Aug. 17, 2005),  Judge  Kennedy  ordered  discovery, holding that "[b]ecause a § 145 action is not a pure review of an administrative record but allows for the submission of new evidence, it follows that the parties may take discovery."  *Hyatt*, at 4 (attached as Exhibit 5).[14]  Thus, *Hyatt* squarely stands for the proposition that discovery is appropriate in Section 145 cases.  *See also In re Newman*, 763 F.2d 407, 408-09 (Fed. Cir. 1985) (Newman sued the Commissioner "pursuant to 35 U.S.C. § 145 seeking *de novo* review of his application.  Following *discovery*, both parties moved for summary judgment.") (emphasis added).

Novo itself does not expect to seek discovery other than that necessary to determine whether the PTO intends to rely on any evidence outside the PTO record and, if so, what that evidence is.[15]  Novo expects to obtain discovery of any expert offered by the PTO, and thereafter to move for summary judgment, if indeed there are no material disputes of fact.  Efficiency is best served by scheduling any dispositive motions, promptly after the close of the 90-day discovery period proposed by Novo.  Joint Report at 7.  *See, e.g.*, *Mazzari*, 323 F.2d at 1003 (the district court denied without prejudice the PTO's motion for summary judgment based on applicant's expert declaration, allowing a supplemental motion for summary judgment after the PTO could depose the expert and the "parties could conduct additional discovery").  Setting a reasonable period for discovery, and then allowing dispositive motions promptly after discovery closes, is thus both fair and efficient.

---

[14] Discovery was stayed in this case, but only because both parties requested a stay of discovery pending briefing as to which of many patent claims were actually before the court on appeal.

[15] *See, supra*, n.1.

## CONCLUSION

For the foregoing reasons, Novo respectfully requests that its Motion be granted.

Respectfully submitted,


_____/s/_____
Margaret K. Pfeiffer  (D.C. Bar No. 358723)
Susan Kaufmann Nash  (D.C. Bar No. 484088)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805
Tel.:  (202) 956-7500
Fax:  (202) 956-6330

Counsel for Plaintiff Novo Nordisk A/S

OF COUNSEL:

Robert Schaffer
Samuel S. Woodley
DARBY & DARBY P.C.
805 Third Avenue
New York, New York 10022
Tel.:  (212) 527-7700
Fax:  (212) 527-7701

# EXHIBIT 1

| | Application No. | | Applicant(s) | |
|---|---|---|---|---|
| **Office Action Summary** | 09/848,774 | | GONDA ET AL. | |
| | Examiner | | Art Unit | |
| | AARON J. LEWIS | | 3761 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>30 December 2002</u> .

2a) ☒ This action is **FINAL**.   2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>22-38</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>22-38</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ .
4) ☐ Interview Summary (PTO-413) Paper No(s). _____ .
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____





UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/848,774 | 05/03/2001 | Igor Gonda | AERX058CON3 | 8982 |

24353        7590        04/15/2003

BOZICEVIC, FIELD & FRANCIS LLP
200 MIDDLEFIELD RD
SUITE 200
MENLO PARK, CA 94025

| EXAMINER |
|---|
| LEWIS, AARON J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3761 | |

DATE MAILED: 04/15/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

Application/Control Number: 09/848,774                                           Page 2

Art Unit: 3761

### *Claim Rejections - 35 USC § 103*

1.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2.      Claims 22-38 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Schenk et al.(WO 90/07351) in view of Velasquez et al.('548).

As to claim 22, Schenk et al. disclose a method of treating a patient comprising the

steps of: supplying a predetermined amount of dry powder (11) to an inhalation device;

releasing a pressurized gas (figs.1-6) over a predetermined amount of dry powder to

create an aerosolized suspension (16) comprising powder suspended in air; and

inhaling the aerosolized suspension at a flow rate and volume sufficient to allow the

patient to absorb in the bloodstream a controlled dose of medicament.

The differences between Schenk et al. and claim 22 are insulin as the dry powder

medicament and the recited intended result of the insulin containing 2-10 times higher

the amount needed to be absorbed in the blood stream of a patient and the intended

result of 1-50 units of insulin being absorbed into a patient's bloodstream.

Velasquez et al. teach a variety of dry powder medicaments as inhalable powders

including insulin as a dry powder medicament for inhalation by a patient.

It would have been obvious to modify the dry powder in Schenk et al. to employ dry

powder insulin as the medicament because it would have provided an easy and

painless manner of delivering insulin to patients as taught by Velasquez et al..

As to the recited intended result of the amount of insulin employed and the amount of insulin being absorbed, it is submitted that the amount of insulin employed and the amount absorbed can be arrived at through mere routine obvious experimentation and observation. That is, the amount of insulin stored in the inhalation device and the amount being absorbed would vary in dependence upon the age, sex and severity of the diabetes of the patient being treated. Consequently, one of ordinary skill would realize that the amount stored and absorbed would need to be tailored to the particular patient's medical needs.

As to claim 23, inasmuch as Schenk et al. as modified by Velasquez et al. teach a method and device for treating diabetes, is stands to reason that the administration protocol would have included repeated inhalation (administration) of insulin to maintain an adequate concentration of medicament in a patient's bloodstream.

As to claim 24, Schenk et al. as modified by Velasquez et al. as discussed above with respect to claim 22 also discloses the inhalation in a single breath (page 10, lines 1-30) the aerosolized suspension adequate to allow absorption of a controlled amount of insulin into a patient's blood stream.

As to claim 25, Schenk et al. as modified by Velasquez et al. as discussed above also teach flowing at least a portion of the aerosolized suspension through a mouthpiece (20) on the device and into the patient's lungs in a manner sufficient to cause the patient to absorb a controlled quantity of insulin.

As to claim 26, inasmuch as Schenk et al. as modified by Velasquez et al. teach a method and device for treating diabetes, is stands to reason that the administration

Application/Control Number: 09/848,774                                    Page 4
Art Unit: 3761

protocol would have included repeated inhalation (administration) of insulin to maintain

an adequate concentration of medicament in a patient's bloodstream.

As to claim 27, Schenk et al. as modified by Velasquez et al. as discussed above

also teach mechanically delivering a predetermined amount of dry insulin powder

(figs.1-6 of Schenk et al.); aerosolizing the dry powder to form a dust cloud (e.g. fig.1);

inhaling a single breath (page 10, lines 24-28).

As to claim 28, inasmuch as Schenk et al. as modified by Velasquez et al. teach a

method and device for treating diabetes, is stands to reason that the administration

protocol would have included repeated inhalation (administration) of insulin to maintain

an adequate concentration of medicament in a patient's bloodstream.

Claims 29-38 are substantially equivalent in scope to claims 22-28 and are included

in Schenk et al. as modified by Velasquez et al. for the reasons set forth above with

respect to claims 27-28.

As to the recited claimed limitations defining a controlled quantity of insulin which is

sufficient to achieve the desired result, Schenk et al. (page 3, lines 5-3; page 4, line 27-

37) disclose a device which maximizes the amount of aerosolized powder medicament

thereby facilitating maximum amounts of medicament inhaled and absorbed into a

patient's bloodstream. That is, given that Schenk et al. disclose aerosolizing most of the

medicament within the aerosolization chamber (16), the amount of medicament

available for inhalation by a patient is predictable.

As to claims 37 and 38, the rate and volume of in Schenk et al. (figs.1-6) includes

mechanical means (springs 27,32) for providing fixed rates and volumes as well as

Application/Control Number: 09/848,774                                    Page 5

Art Unit: 3761

means for varying the rate and volume by varying the spring constants and varying the

pressure being applied to pump (42).

### *Response to Arguments*

3.      Applicant's arguments with respect to claims 22-38 have been considered but are

moot in view of the new ground(s) of rejection.

### *Conclusion*

4.      Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP

§ 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to AARON J. LEWIS whose telephone number is (703)

308-0716. The examiner can normally be reached on 9:30AM-6:00PM M-F.

Application/Control Number: 09/848,774                                    Page 6
Art Unit: 3761

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, WEILUN LO can be reached on (703) 308-1957. The fax phone numbers

for the organization where this application or proceeding is assigned are (703) 305-3590

for regular communications and (703) 305-3590 for After Final communications.

Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is (703) 308-

0858.

AARON J. LEWIS
Primary Examiner
Art Unit 3761

Aaron J. Lewis
April 7, 2003

# EXHIBIT 2

The opinion in support of the decision being entered today was *not* written
for publication in and is *not* binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

_____

*Ex parte*  IGOR GONDA, REID M. RUBSAMEN and STEPHEN J. FARR

_____

Appeal No. 2006-1762
Application No. 09/848,774
Technology Center 3700

_____

ON BRIEF

_____

MAILED

SEP 0 7 2006

U.S. PATENT AND TRADEMARK OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Before BAHR, LEVY, and FETTING, *Administrative Patent Judges.*

FETTING, *Administrative Patent Judge.*

DECISION ON APPEAL

This is a decision on appeal under 35 U.S.C. §134 from the examiner's final rejection of
claims 22 through 28, which are all of the claims pending in this application.

We AFFIRM.

1

Appeal Number: 2006-1762
Application Number: 09/848,774

## BACKGROUND

The appellants' invention relates to an insulin inhaler.  An understanding of the invention can be derived from a reading of exemplary claim 22, which is reproduced below.

22. A method for treating diabetes mellitus in a patient comprising the steps of:
   a.  supplying a predetermined amount of dry insulin powder to an inhalation device;
   b.  releasing a pressurized gas over the predetermined amount of dry insulin powder to create an aerosolized suspension comprising powder suspended in air, wherein the aerosolized suspension contains an amount of insulin that is 2-10 times higher than the amount needed to be absorbed in the bloodstream of the patient; and
   c.  inhaling the aerosolized suspension at a flow rate and volume sufficient to allow the patient to absorb in the bloodstream a controlled dose of insulin that comprises between 1-50 units of insulin.

## PRIOR ART

The prior art references of record relied upon by the examiner in rejecting the appealed claims are:

| | | |
|---|---|---|
| Velasquez | 5,192,548 | March 9, 1993 |
| Schenk | PCT WO 90/07351 | July 12, 1990 |

Isselbacher et al. (ed.), Harrison's Principles of Internal Medicine, 13th Edition, Vol. 2, pp. 1986-1987, 1994 (Harrison)

## REJECTION

Rather than reiterate the conflicting viewpoints advanced by the examiner and the appellants regarding the above-noted rejection, we make reference to the examiner's answer (mailed Aug 12, 2004) for the reasoning in support of the rejection, and to appellants' brief (filed May 10, 2004) and reply brief (filed Oct 12, 2004) for the arguments thereagainst.

Claims 22 through 38 stand rejected under 35 U.S.C. § 103 as obvious over Schenk in view of Velasquez.

Appeal Number: 2006-1762
Application Number: 09/848,774

## OPINION

In reaching our decision in this appeal, we have given careful consideration to appellants' specification and claims, to the applied prior art references, and to the respective positions articulated by appellants and the examiner. As a consequence of our review, we make the determinations that follow.

### Claims 22 through 38 rejected under 35 U.S.C. § 103 as obvious over Schenk in view of Velasquez.

As to claims 22 and 23, the appellants argue that the art fails to show the claim elements of "the aerosolized suspension contains an amount of insulin that is 2-10 times higher than the amount needed to be absorbed in the bloodstream of the patient" and "inhaling the aerosolized suspension at a flow rate and volume sufficient to allow the patient to absorb in the bloodstream a controlled dose of insulin that comprises between 1-50 units of insulin." [See Brief at p. 13]. The appellants go on to argue that the law does not recognize an "obvious to try"/ "routine experimentation" standard for proof of obviousness. [See Brief at p. 14].

The examiner responds that the claimed dose of 1-50 units is that which is administered to patients in typical administration, as evidenced by Harrison. The examiner goes on to argue that the examiner has not applied an "obvious to try" argument, but has applied the taught application of Velasquez' insulin powder to Schenk's inhaler, and that a person of ordinary skill in the art would know the standard guidelines for the number of units that are needed to be absorbed and would adjust the amount inhaled to achieve that amount accordingly. The examiner also responds that a person of ordinary skill in the art would know that the amount of aerolized suspension would have to be substantially higher than the amount needed to be absorbed and that the specification shows no criticality for the range of 2-10 times the amount. [See Answer at p. 5-8]

The appellants responded that neither reference discloses delivery to the bloodstream through inhalation let alone in controlled doses. [See Reply Brief at p. 5-6]. The appellants further argue that any guidelines that might be found in the art, including Harrison, refer to injected rather than inhaled insulin. [See Reply Brief at p. 6].

3

Appeal Number: 2006-1762
Application Number: 09/848,774

We first note that none of the claims contain limitations specifying structural characteristics that control the amount of insulin inhaled or actually absorbed. Instead, the claims recite the results to be achieved, *viz.* the amount to be inhaled and absorbed, and are consequently broad enough to embrace any technique for achieving those amounts. We further note that the ranges specified in the claims for such amounts are very broad, suggesting minimal criticality for any particular subset of such ranges.

As to the limitation regarding the number of units to be absorbed, we further note that the appellants' disclosure supports the examiner's finding that an absorption of 1-50 units would be that which a person of ordinary skill in the art would ordinarily use. [See Specification at p. 21]. This recitation confirms the findings of the examiner as to the evidentiary value of Harrison's recitation of amounts. Therefore, we find the appellants' arguments as to the limitation of an absorption of 1-50 units to be unpersuasive.

As to the limitation regarding the amount of insulin in the aerosolized suspension, we next note that with inhaled substances, it is known to a person of ordinary skill in the art that not all of the amount that is inhaled will be absorbed. The fraction that will be absorbed relative to the total amount inhaled is referred to in the art as the "respirable fraction". We note that Velasquez describes the range that such respirable fractions may embrace for the various medicaments it describes at col. 5 lines 7-15. Velasquez mentions the fraction may be in the range of 10% to 65%. Taking the inverse of this range to determine the amount of medicament that would need to be inhaled yields a range of 1.54 to 10 times the amount needed to be absorbed, which we note substantially overlaps the claimed range of 2 to 10 times. Therefore, we find the appellants' arguments as to the claim limitation of "the aerosolized suspension contains an amount of insulin that is 2- 10 times higher than the amount needed to be absorbed in the bloodstream of the patient" to be unpersuasive.

We next note that medicament that is inhaled is absorbed into the blood stream by the lungs. Therefore, we find the appellants' arguments as to the claim being toward delivery through inhalation rather than to the bloodstream to be unpersuasive.

We next note that the appellants make much of the argument that the applied art fails to show how insulin is to be inhaled in controlled delivery. However, we note that, contrary to this

4

Appeal Number: 2006-1762
Application Number: 09/848,774

argument by the appellants, both applied references describe structural devices to precisely control the amount of a medicament delivered. Velasquez resorts to precise measuring of small amounts in equal sized depressions for use in an inhaler. Schenk resorts to a metering chamber. To the extent the appellants mean to argue that neither reference teaches how to translate those structural controls into the precise amounts of insulin needed to be deposited for inhalation, we again note the broad ranges both disclosed and claimed in the appellants' application that suggest the precise amount is not critical to the invention, or more properly, the precise amount is highly dependent on the individual patient and therefore cannot be claimed with precision. Again, we note that the appellants' disclosure at p. 21 supports this high degree of variability among patients. We further note that the claim does not recite any structural mechanism for precisely matching the amounts of insulin with the patient. Therefore the appellants' arguments that neither reference teaches how to translate those structural controls into the precise amounts of insulin needed to be deposited for inhalation are unpersuasive.

We further note that the appellants have attempted to portray the examiner's rejection as an obvious to try application, followed by an admonition that the law does not support such a theory. However, our reviewing court has stated that "it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Geisler*, 116 F.3d 1465, 43 USPQ2d 1362 (Fed. Cir. 1997). Therefore, we find the appellant's arguments as to such optimization to be unpersuasive.

As to claims 25, 26, 31 and 35, the appellants repeat the above arguments and they are equally unpersuasive as to these claims. The appellants further argue claim limitations of repetition (claim 25, 26 and 31 - [See Brief at p. 14-17]) and of lowering the glucose level to an acceptable level (claim 31 - [See Brief at p. 16]) and of controlling the glucose levels (claims 25, 26, 31 and 35 - [See Brief at p. 14-17]). We note Shenk's inhaler is inherently repeatable in operation, and that the lowering of glucose levels to an acceptable level and controlling the glucose levels are both highly dependent upon the particular patient and a person of ordinary skill in the art would monitor the patient's vital statistics to achieve the desired result in view of the high variability among patients as a matter of course. Therefore, we find the appellant's arguments to be unpersuasive.

5

Appeal Number: 2006-1762
Application Number: 09/848,774

As to the remaining claims, the appellants present no arguments to them separate from those indicated above, and therefore those claims stand or fall with claim 22.

Accordingly we sustain the examiner's rejection of claims 22 through 38 rejected under 35 U.S.C. § 103 as obvious over Schenk in view of Velasquez.

## REMARKS

We note that the phrase "respirable fraction" is a term of art that may be pertinent in resolving any further patentability issues concerning the amount of a medicament needed to be inhaled to achieve appropriate absorption.

## CONCLUSION

To summarize,

- The rejection of claims 22 through 38 rejected under 35 U.S.C. § 103 as obvious over Schenk in view of Velasquez is sustained.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR § 1.136 (a) (1) (iv).

Appeal Number: 2006-1762
Application Number: 09/848,774

### AFFIRMED

JENNIFER D. BAHR                                    )
Administrative Patent Judge                          )
                                                     )
                                                     )
                                                     )
                                                     ) BOARD OF PATENT
STUART S. LEVY                                        )    APPEALS
Administrative Patent Judge                          )      AND
                                                     )  INTERFERENCES
                                                     )
                                                     )
ANTON W. FETTING                                     )
Administrative Patent Judge                          )

NOVO NORDISK, INC.
PATENT DEPARTMENT
100 COLLEGE ROAD WEST
PRINCETON, NJ 08540

# EXHIBIT 3

# Manual of PATENT EXAMINING PROCEDURE

Original Eighth Edition, August 2001
Latest Revision August 2006



## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

Rev. 5, Aug. 2006

In the event of a dismissal for a reason other than failure to prosecute the appeal, the status of the application, reexamination proceeding or interference must be determined according to the circumstances leading to the dismissal.

## 1216.02    Civil Suits Under 35 U.S.C. 145 [R-3]

A 35 U.S.C. 145 civil action is commenced by filing a complaint in the U.S. District Court for the District of Columbia within the time specified in 37 CFR 1.304 (see MPEP § 1216). Furthermore, copies of the complaint and summons must be served in a timely manner on the Solicitor, the U.S. Attorney for the District of Columbia, and the Attorney General in the manner set forth in Rule 4(i) of the Federal Rules of Civil Procedure. Regarding timely service, see *Walsdorf v. Comm'r*, 229 USPQ 559 (D.D.C. 1986) and *Hodge v. Rostker*, 501 F. Supp. 332 (D.D.C. 1980). When a 35 U.S.C. 145 civil action is filed, a notice thereof is placed in the application or reexamination file, which ordinarily will be kept in the Solicitor's Office pending termination of the civil action. >All the expenses of the proceedings shall be paid by the applicant (see 35 U.S.C. 145).<

In an action under 35 U.S.C. 145, the plaintiff may introduce evidence not previously presented to the U.S. Patent and Trademark Office. However, plaintiff will be precluded from presenting new issues, at least in the absence of some reason of justice put forward for failure to present the issue to the U.S. Patent and Trademark Office. *DeSeversky v. Brenner*, 424 F.2d 857, 858, 164 USPQ 495, 496 (D.C. Cir. 1970); *MacKay v. Quigg*, 641 F. Supp. 567, 570, 231 USPQ 907, 908 (D.D.C. 1986). Furthermore, new evidence is not admissible in district court where it was available to the parties but was withheld from the U.S. Patent and Trademark Office as a result of fraud, bad faith, or gross negligence. *DeSeversky*, 424 F.2d at 858 n.5, 164 USPQ at 496 n.5; *California Research Corp. v. Ladd*, 356 F.2d 813, 821 n.18, 148 USPQ 404, 473 n.18 (D.C. Cir. 1966); *MacKay*, 641 F. Supp. at 570, 231 USPQ at 908; *Monsanto Company v. Kamp*, 269 F. Supp. 818, 822, 154 USPQ 259, 260 (D.D.C. 1967); *Killian v. Watson*, 121 USPQ 507, 507 (D.D.C. 1958).

Upon termination of the civil action, a statement of the court's final disposition of the case is placed in the application or reexamination file, which is then returned to the examiner for action in accordance with the same procedures as follow termination of a 35 U.S.C. 141 appeal. See MPEP § 1216.01. 37 CFR 1.197(*>b<) provides that a civil action is terminated when the time to appeal the judgment expires. Where the exact date when the civil action was terminated is material, the date may be ascertained from the Solicitor's Office.

The procedures to be followed in the U.S. Patent and Trademark Office after a decision, remand, or dismissal of the case by the district court are the same as the procedures followed with respect to 35 U.S.C. 141 appeals. See MPEP § 1216.01.

Where a civil action involving an application has been dismissed before coming to trial, the application will not be opened to the public unless it is otherwise available to the public under 37 CFR 1.11. However, the complaint and any other court papers not under a protective order are open to the public and may be inspected at the Office of the Clerk for the U.S. District Court for the District of Columbia, located in the U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, DC 20001. The court papers in the Office of the Solicitor are not generally made available for public inspection.

Any subpoena by the district court for an application or reexamination file should be hand-carried to the Office of the Solicitor.

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GILBERT P. HYATT,

                    Plaintiff,

           v.

JON W. DUDAS, Under Secretary of
Commerce for Intellectual Property and
Director of the United States Patent and
Trademark Office,

                    Defendant.

Civil Action 03-0901 (HHK)

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gilbert P. Hyatt ("Hyatt"), brings this action against defendant, Jon W. Dudas,[1]

in his official capacity as Director of the United States Patent and Trademark Office ("PTO"),

seeking review of the decision of the Board of Patent Appeals and Interferences ("Board") to

affirm the rejection of 79 of 117 claims in Hyatt's patent application.  Before the court is Hyatt's

motion for reconsideration [#48] of the court's order entering summary judgment in favor of

PTO.  Upon consideration of the motion, PTO's opposition thereto, and the record of this case,

the court concludes that Hyatt's motion must be denied.

---

[1]       Jon Dudas became the Director of the United States Patent and Trademark Office
in 2004.  When Hyatt initially filed his complaint on April 16, 2003, James Rogan held this
position.  Pursuant to Fed. R. Civ. P. 25(d)(1), the court has substituted Dudas for Rogan as the
defendant in this lawsuit.

# I. BACKGROUND

The court previously granted summary judgment in favor of PTO, determining (1) that Hyatt could not submit as evidence a declaration presented to the court, refuting various written description rejections of the Board, because he negligently failed to present the same evidence to the Board, and (2) that the Board's rejection of Hyatt's application was supported by substantial evidence. Hyatt brings his motion pursuant to Federal Rule of Civil Procedure 59(e), and requests that the court alter and ament its judgment in order to correct clear errors and prevent manifest injustice. He makes four arguments: (1) that the court erroneously relied on D.C. Circuit, rather than Federal Circuit, precedent in applying limitations on Hyatt's ability to submit new evidence to the court; (2) that even if the court looked to correct precedent, it misconstrued the standard to be applied; (3) that Hyatt satisfied both the correct standard and the standard Hyatt claims was erroneous; and (4) that the court should reconsider its reasoning underlying its reliance on *In re Alton*, 76 F.3d 1168 (Fed. Cir. 1996). The court has reviewed each of these arguments and rejects each of them. For purposes of clarifying its prior opinion on the motions for summary judgment, the court will address Hyatt's three arguments related to his attempted submission of his declaration to the court in this memorandum opinion and order.

# II. ANALYSIS

## A.    Reliance on District of Columbia Precedent

Hyatt first argues that District of Columbia precedent, which limits the circumstances in which an applicant may submit new evidence, should not be followed by the court, given the Federal Circuit's purported approval of a liberal right of applicants to submit new evidence in

§ 145 actions. As the court already determined, however, the Federal Circuit has not rejected this body of case law, and absent such a rejection, it remains the law of this court. Mem. Op. at 10 n.4.

## B.     The Standard for Submission of New Evidence in § 145 Actions

The standard to be applied when assessing whether new evidence (regarding issues previously presented to the Board) properly has been presented to a court in a § 145 action has been described using disparate phrasing, as Hyatt properly observes. Pl.'s Mot. for Recons. at 11–12. Some cases have articulated a standard which holds that such evidence shall not be admissible in district court if it was available to the parties, but was withheld from the Patent Office as a result of fraud, bad faith, or gross negligence. *See MacKay v. Quigg*, 641 F. Supp. 567, 570 (D.D.C. 1986); *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 822 (D.D.C. 1967); *Shell Development Co. v. Pure Oil Co.*, 111 F. Supp. 197, 199 (D.D.C. 1953). Others describe the standard as barring evidence withheld because of intentional suppression or simple negligence. *See Holloway v. Quigg*, 9 U.S.P.Q.2d 1751, 1751–1752 (D.D.C. 1988); *DeSeversky v. Brenner*, 424 F.2d 857, 858 n.5 (D.C. Cir. 1970) (quoting *California Research Corp. v. Ladd*, 356 F.2d 813, 821 n.18 (D.C. Cir. 1966)).

### 1.     The *Killian* Case

An early case frequently cited with regard to this rule is *Killian v. Watson*. 121 U.S.P.Q. 507 (D.D.C. 1958). Hyatt's arguments to the contrary, that decision did not expressly adopt the "gross negligence" standard urged by Hyatt. Rather, it quoted *Shell Development*, which the *Killian* court merely described, without approval, as stating "the most inclusive" articulation of the rule. *Id.* at 507. The court immediately thereafter cited *Barrett Co. v. Koppers Co.*, 22 F.2d

3

395, 397 (3d Cir. 1927), an interference decision which the *Killian* court described as being the first to adopt the rule. *Ibid.* The *Barrett* court wrote:

> In a contest between two claimants to the same invention on an issue of priority each is expected to produce all the testimony he has on that issue so that the Patent Office tribunals and the courts may make right decisions. If for some reason of his own a party withhold evidence which is available to him and which he can produce at will but does not produce, then he must be regarded as having abandoned that evidence in its bearing on the issue under trial.

*Barrett*, 22 F.2d at 397. In its most nascent state, then, the rule shaded closer to simple negligence than gross negligence. If a party "for some reason" failed to put the evidence forward in prior proceedings, he was "regarded as having abandoned that evidence in its bearing on the issue under trial." *Ibid.*

The *Killian* court, when it actually announced its conclusions of law, articulated the rule as presumptively excluding new evidence, absent a satisfactory explanation from the presenting party:

> Where a plaintiff in an action under Section 145 of Title 35 of the United States Code offers no explanation for his failure to submit to the Patent Office, during the prosecution of his application for patent, evidence purporting to show that he invented the claimed subject matter prior to the effective filing date of the application on which a patent said to anticipate was granted, such evidence is not properly admissible.

*Killian*, 121 U.S.P.Q. at 509.[2] By this rule, then, some persuasive explanation—and presumably an objectively reasonable explanation, rather than a *mea culpa*—must be provided for the evidence to be admissible.

---

[2]    The court then concluded that the party withholding the evidence at issue in that case was grossly negligent in withholding evidence during the PTO proceeding. Such negligence would, of course, satisfy the rule announced in *Killian*, but the fact that the party there was grossly negligent does not mean the court meant something different from what it said when it announced its conclusions of law.

2.     **The Rule Prior to *Killian***

*Shell Development*, from which the gross-negligence language actually originated, relied

on *Knutson v. Gallsworthy*, 164 F.2d 497 (D.C. Cir. 1947), which stated simply that "a party may

not successfully offer to the court evidence withheld from the Patent Office." *Id.* at 509.

*Knutson*, in turn, cited to numerous decisions, including *Barrett*, none of which insisted on

intentional withholding or gross negligence. *Knutson*, 164 F.2d at 509 n.28.  Rather, these

decisions describe the rule as barring evidence that was available to the party but nonetheless

withheld, for whatever reason. *See Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 84–85

(D.C. Cir. 1944) (citing prior cases); *Boucher Inventions v. Sola Electric Co.*, 131 F.2d 225, 227

(D.C. Cir. 1942) (failure to present "readily available" evidence not contemplated by the review

scheme); *Greene v. Beidler*, 58 F.2d 207, 209 (2d Cir. 1932) (parties who withheld evidence in

interference action could not rely on that evidence in a later civil action); *Barrett*, 22 F.2d at

397.[3]  The rule, then, articulated first in *Barrett* and re-articulated in *Killian* and other cases,

excludes evidence that was previously available to a party but, either because of intentional

suppression by or negligence of the party, was withheld during the initial patent proceedings.  *See*

*Holloway*, 9 U.S.P.Q.2d at 1752 (evidence may be "excluded if it was available to the plaintiff

during the PTO proceeding but was either intentionally or negligently withheld"); *DeSeversky*,

424 F.2d at 858 n.5 ("[T]he plaintiff may not submit for the first time evidence which he was

negligent in failing to submit to the Patent Office.") (quoting *California Research*, 356 F.2d at

821 n.18).

---

[3]     Many of these early cases involve apparent intentional withholding of evidence.
None of the cases holds, however, that evidence will be excluded in judicial actions *only* when
the prior failure to present the evidence was willful or grossly negligent.

### 3.    Policy Rationales for the Rule

The policy rationales for the rule further support this interpretation of its scope.  As the Third Circuit wrote in *Barrett*, "[e]ach [party] is expected to produce all the testimony he has on [the issues presented] so that the Patent Office tribunals and [later] the courts may make the right decisions." *Barrett*, 22 F.2d at 397.  Likewise, the D.C. Circuit, in the two cases in which it articulated the standard as one of simple negligence, wrote that "[in] short, the District Court proceeding may not be conducted in disregard of the general policy of encouraging full disclosure to administrative tribunals." *California Research*, 356 F.2d at 821; *DeSeversky*, 424 F.2d at 858 n.5 (quoting *California Research*).  Allowing parties who negligently fail to submit evidence prior to bringing § 145 actions would substantially undermine this policy favoring comprehensive disclosure.

### C.    Application of the Rule to Hyatt

Hyatt has not disputed that the information he presented in his declaration was available to him during the PTO proceedings, nor has he provided a persuasive explanation for why he withheld that information.  As the court previously determined, he was at least negligent in failing to present this evidence to the PTO and the Board.  The declaration was properly excluded.

### III. CONCLUSION

For the aforementioned reasons, it is this 30th day of September, 2006, hereby

**ORDERED** that Hyatt's motion to alter or amend the judgment [#48] is **DENIED**.

6

Henry H. Kennedy, Jr.
United States District Judge

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>             Plaintiff,<br><br>          v.<br><br>HON. JON W. DUDAS,<br><br>             Defendant. | Civil Action 04-01802 (HHK) |

MEMORANDUM OPINION AND ORDER

Plaintiff, Gilbert P. Hyatt, brings this action against Jon W. Dudas, in his official capacity as Acting Director of the United States Patent and Trademark Office ("PTO"), under 35 U.S.C. § 145 ("§ 145"). Hyatt, an inventor based in Las Vegas, Nevada, is best known for his work in "such technical subject areas as microcomputers, computer memories and displays, and global-positioning systems." Pl.'s Mot. for Discovery at 2. He challenges the decision by the Board of Patent Appeals and Interferences ("the Board") affirming PTO's rejection of three of his patent applications.

Presently before the court are Hyatt's motion for discovery [#18] and PTO's motion for a protective order to stay discovery [#19]. Upon consideration of the motions, the oppositions thereto, and the record of the case, the court concludes that both motions should be granted.

I. BACKGROUND

At issue are three patent applications Hyatt filed with the PTO on April 21, 1995: Patent Application Number 08/426,450 ("the '450 application"), for "An Improved Communication System," Compl. ¶¶ 5, 19; Patent Application Number 08/426,361 ("the '361 application"), for "An Improved Roundoff System," *id.* ¶¶ 5, 24; and Patent Application Number 08/426,549 ("the '549

application"), for "An Improved Memory System," *id.* ¶¶ 5, 29. The PTO examiner responsible for evaluating these applications rejected all three claims on the basis that they lacked adequate written description support as required by 35 U.S.C. § 12.[1] Hyatt appealed the examiner's rejections to the Board, which sustained the written description rejections for all three applications.

Hyatt now seeks judicial review of the Board's decisions. He also seeks discovery "regarding which claims and claim limitations the PTO contends are at issue," Pl.'s Mot. for Discovery at 8. PTO requests a stay of discovery pending the filing and resolution of dispositive motions which it believes will substantially narrow the issues at hand.

## II. ANALYSIS

**A.    Section 145 Actions – Applicable Law**

A patent applicant dissatisfied with the Board's decision may seek judicial review either by appealing to the Court of Appeals for the Federal Circuit, under 35 U.S.C. § 141, or by filing a civil action to obtain a patent in District Court for the District of Columbia under 35 U.S.C. § 145.[2] *Mazzari v. Rogan*, 323 F.3d 1000, 1003 (Fed. Cir. 2003). These routes are mutually exclusive. *See* 35 U.S.C. §§ 141, 145. "The thrust of a § 145 action is that the decision of the board is erroneous on the facts, the law or both." *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1037 (Fed. Cir. 1985). If an applicant proceeds under § 145 and prevails, the district court may "set aside any ruling refusing a

---

[1]    In seeking discovery, Hyatt notes that the PTO also rejected certain claims in the '361 application on the grounds of obviousness, Pl.'s Mot. for Discovery at 2, and "the patentability of the 'making a product' claims," Pl.'s Reply/Opp'n at 2 n.3, though he did not raise these issues in his complaint.

[2]    "The court may adjudge that such an applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law." 35 U.S.C. § 145.

patent." *Mazzari*, 323 F.3d at 1004 (citing *Hoover Co. v. Coe*, 325 U.S. 79, 85 (1945)).

Unlike an appeal brought under § 141, a § 145 action "affords the applicant an opportunity to present additional evidence or argue the previous evidence afresh, either by simply relying upon the record below or by reintroducing the same evidence through alternative means such as live testimony." *Id.* Although the "evidentiary record before the Board serves as the 'evidentiary nucleus'" of the § 145 proceeding, "the parties are entitled to submit additional evidence." *Gould v. Quigg,* 822 F.2d 1074, 1076 (Fed. Cir. 1987) (citing *Fregeau*, 776 F.2d at 1037). The court reviews the Board's legal conclusions *de novo*, while applying a 'substantial evidence' standard of review to the Board's factual findings. *In re Pacer Tech.*, 338 F.3d 1338, 149 (Fed. Cir. 2003) (citing *In re Int'l Flavors & Fragrances Inc.*, 183 F.3d 1361, 1365 (Fed. Cir. 1999); *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000)). The substantial evidence standard is derived from the Administrative Procedure Act, *see Dickinson v. Zurko*, 527 U.S. 150, 152, 161-62 (1999), and requires the court to inquire "whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Id.* at 162 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (quotation marks omitted)).

If the parties present new evidence, supplement evidence previously submitted at the administrative level, or introduces live testimony, however, "the district court takes on the role of fact-finder," *Mazzari*, 323 F.3d at 1004, and uses a *de novo* standard of review. *Gould*, 822 F.3d at 1077; *see also Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1346 (Fed. Cir. 2000) ("the admission of live testimony at trial requires the factfinder to make its *own* findings," even if the testimony concerns issues already presented to the Board). This is contrary to PTO's contention that "[i]f new evidence is admitted, [the substantial evidence] standard still applies," Joint Report on Conference of Parties for LCvR 16.3 Meeting at 5. Because the record before the district court

3

in a § 145 action "may include the evidence before the Board as well as evidence that was not

before the Board," § 145 proceedings are thus "a hybrid of an appeal and a trial *de novo*." *Winner*

*Int'l*, 202 F.3d at 1345 (quoting *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592 (Fed. Cir.

1997) (internal quotation marks omitted)).

_____While the parties are entitled to submit additional evidence, they are "precluded from

presenting new *issues*," and  the court should "abstain from consideration of an issue that has not

been presented to the Patent Office," *DeSeversky v. Brenner*, 424 F.2d 857, 858-59 (D.C. Cir. 1970)

(emphasis added).  In addition, if an applicant could have presented evidence during the PTO's

administrative proceedings but withheld it due to "negligence or suppression," he may be precluded

from presenting such evidence to the district court. *MacKay v. Quigg*, 641 F. Supp. 567, 571

(D.D.C. 1986).

**B.     Section 145 Actions – Scope of Discovery**

Because a § 145 action is not a pure review of an administrative record but allows for the

submission of new evidence, it follows that the parties may take discovery. *See In re Newman*, 782

F.2d 971, 974 (Fed. Cir. 1986); *Boeing v. Comm'r of Patents and Trademarks*, 853 F.2d 878, 879

(Fed. Cir. 1988) (mentioning reports produced "[d]uring discovery in the section 145 action," and

summary judgment motion filed at close of discovery); *In re Newman*, 763 F.2d 407, 409 (Fed. Cir.

1985) (in a § 145 proceeding, noting that "[f]ollowing discovery, both parties moved for summary

judgement").  Discovery in a § 145 action, as in civil actions generally, is governed by Rule 26 of

the Federal Rules of Civil Procedure.[3]  Consequently, Hyatt's motion to allow discovery must be

---

[3]     The Rule provides, in part, that the parties "may obtain discovery regarding any
matter, not privileged, that is relevant to the claim or defense of any party . . . subject to the
limitations" outlined by the Rule.  Fed. R. Civ. P. 26(b)(1).

granted.

The PTO is correct, however, that discovery in a § 145 action is not boundless. Because

the parties are limited to "issues raised . . . during the proceedings below or by the board's

decision," *Winner Int'l*, 202 F.3d at 1346 (quoting *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098,

1102 (Fed. Cir. 1994)), discovery is limited accordingly.[4]  A crucial question affecting the scope of

discovery in the present case is whether Hyatt may challenge, and the PTO must defend, only the

specific claim limitations the PTO discussed at the administrative level, or whether instead "all of

the pending claims of each patent application are at issue" in this action. Pl.'s Reply/Opp'n at 10.

According to the PTO, "[a]lthough each of the three applications in this case had hundreds

of claims which were rejected due to lack of adequate written description, one representative claim

was used as the basis for each decision." Def.'s Mot. for Protective Order at 3.  Specifically, the

PTO contends, the Board rejected the '450 application on the basis of claim number 1; the '361

application on the basis of claim number 128; and the '549 application on the basis of claim number

150.  *Id*. at 4.  The PTO then asserts that "the only claims at issue in this matter are the

representative claims . . . upon which the Board rendered its decision," and consequently "any

allowable discovery should be limited to those representative claims."  Def.'s Mot. for Protective

Order at 7; *see also* Def.'s Opp'n at 2 ("[t]he Board's decision to not issue patents was based on it

not finding written description for those particular representative claims.").  On this basis the PTO

asks the court to stay discovery pending the filing and resolution of dispositive motions which it

believes will "significantly limit the issues" remaining before the court.  *Id*. at 2.  Hyatt, in turn,

---

[4]      Both *Winner International* and *Conservolite* resolved an interference action under
35 U.S.C. § 146, rather than a challenge to the PTO under § 145, but the two statutory sections
provide "parallel provisions" for admissibility of evidence and preclusion of new 'issues.' *Winner
Int'l*, 202 F.3d at 1345.

"strongly asserts that all of the claims are before the Court," *id.* at 10.[5]  At the same time, he agrees that "a stay of discovery may be appropriate in order to allow the parties to brief potentially dispositive or narrowing issues," including "whether before the Court for review in this section 145 action are all of the pending claims for patentability, or only three," Pl.'s Reply/Opp'n at 2. The court agrees with the parties that the extent of the claims requiring adjudication will control the scope of discovery, and will consequently stay discovery pending further briefing and resolution of this threshold issue.

**ORDER**

For the foregoing reasons, it is this 17th day of August, 2005, hereby

**ORDERED**, that Hyatt's motion to allow discovery is **GRANTED**; and it is further

**ORDERED**, that discovery is stayed pending further briefing by the parties and the court's ruling on whether the court should consider only the three representative claims or all of the asserted claims; and it is further

**ORDERED**, that the parties shall file briefs addressing this issue by September 17, 2005.


Henry H. Kennedy, Jr.
United States District Judge

---

[5]     At least one court has stated that it is appropriate to resolve all issues that were "raised and developed" before the Board, "whether or not the Board actually resolved them." *Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F. Supp. 2d 71, 76 (D.D.C. 2003).  The court awaits argument from the parties on the suitability of this course of action and on which claims were "raised and developed" during the administrative proceedings.