IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOVO NORDISK A/S, )<br> )<br> Plaintiff, )<br> v. ) Case No: 06-1896 (CKK)<br> )<br>JON W. DUDAS, ) Judge Colleen Kollar-Kotelly<br> Under Secretary of Commerce for )<br> Intellectual Property and ) ECF<br> Director of the United States Patent )<br> & Trademark Office, )<br> )<br> Defendant. )<br> ) | |

**NOVO NORDISK'S REPLY IN SUPPORT OF ITS MOTION
REGARDING DISCOVERY AND ADMISSIBILITY OF EVIDENCE**

 Margaret K. Pfeiffer (D.C. Bar No. 358723)
 Susan Kaufmann Nash (D.C. Bar No. 484088)
 SULLIVAN & CROMWELL LLP
 1701 Pennsylvania Avenue, N.W.
 Washington, D.C. 20006-5805
 Tel.: (202) 956-7500
 Fax: (202) 293-6330

 Counsel for Plaintiff Novo Nordisk A/S

OF COUNSEL:

Robert Schaffer
Samuel S. Woodley
DARBY & DARBY P.C.
805 Third Avenue
New York, New York 10022
Tel.: (212) 527-7700
Fax: (212) 527-7701


Dated: August 24, 2007

## TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................................2

    I.   The Rule Urged by the PTO Is Contrary to Binding Precedent ..........................2

    II.  Novo's Contemplated Evidence Is Admissible ...................................................5

    III. The Ruling the PTO Requests on the Admissibility of Specific Evidence
         To Be Offered by Novo Is Premature ................................................................10

CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Brand* v. *Miller*,
    487 F.3d 862 (Fed. Cir. 2007) ................................................................................6, 9

*Burlington Indus.* v. *Quigg*,
    822 F.2d 1581 (Fed. Cir. 1987) ....................................................................................4

*Fregeau* v. *Mossinghoff*,
    776 F.2d 1034 (Fed. Cir. 1985) ....................................................................................4

*Gould* v. *Quigg*,
    822 F.2d 1074 (Fed. Cir. 1987) ....................................................................................4

*Graham* v. *John Deere Co.*,
    383 U.S. 1 (1966) .........................................................................................................9

*Hyatt* v. *Dudas*,
    No. 03-0901 (D.D.C. September 30, 2006) ..............................................................2, 4

*In re Waymouth*,
    486 F.2d 1058 (C.C.P.A. 1973) ................................................................................6, 8

*Killian* v. *Watson*,
    121 USPQ 507 (D.D.C. 1958) ............................................................................2, 3, 4

*MacKay* v. *Quigg*,
    641 F. Supp. 567 (D.D.C. 1986) ..................................................................................2

*Mazzari* v. *Rogan*,
    323 F.3d 1000 (Fed. Cir. 2003) ....................................................................................4

*McGinley* v. *Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001) ....................................................................................7

**FEDERAL STATUTES**

35 U.S.C. § 103 .....................................................................................................................9

35 U.S.C. § 141 .....................................................................................................................5

35 U.S.C. § 145 .............................................................................................................passim

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**OTHER AUTHORITIES**

MPEP Patent Rule § 1.51 ...............................................................................................................6

MPEP Patent Rule § 1.113(a) .........................................................................................................7

MPEP Patent Rule § 1.132 ..............................................................................................................7

MPEP Patent Rule § 41.52(a)(1) .....................................................................................................7

MPEP § 2141 ..................................................................................................................................9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOVO NORDISK A/S, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No: 06-1896 (CKK) |
| ) | |
| JON W. DUDAS, ) | Judge Colleen Kollar-Kotelly |
| Under Secretary of Commerce for ) | |
| Intellectual Property and ) | ECF |
| Director of the United States Patent ) | |
| & Trademark Office, ) | |
| ) | |
| Defendant. ) | |

**NOVO NORDISK'S REPLY IN SUPPORT OF ITS MOTION
REGARDING DISCOVERY AND ADMISSIBILITY OF EVIDENCE**

In its Memorandum opposing Novo Nordisk's Motion ("Opposition"), the Patent and Trademark Office ("PTO") asks this Court to create a new rule for Section 145 actions: that any evidence that was not, but "could have" been, presented to the PTO should be excluded at trial based on a presumption that such evidence was withheld with gross negligence or negligence, at least when a plaintiff does not offer any explanation for not presenting it. Opposition, at 1, 3, 6. Even though Novo Nordisk ("Novo") had no opportunity to present to the PTO evidence that pertains to matters first raised by the decision of the Board of Patent Appeals and Interferences ("Board"), the PTO asserts that Novo should be barred from introducing any evidence not introduced below. *Id.*

The "rule" the PTO seeks is contradicted by binding precedent.  In any event, Novo has offered a proper explanation for its inability to present this evidence to the PTO, and must be allowed to present evidence in this Court.

**ARGUMENT**

**I.      The Rule Urged by the PTO Is Contrary to Binding Precedent.**

The general rule is that additional evidence is admissible in Section 145 actions, with two narrow exceptions.  In its discretion, a court may exclude evidence that relates to an issue that was not raised before the PTO and evidence that was readily available to the plaintiff, but was withheld from the PTO "as a result of fraud, bad faith, or gross negligence."  *MacKay* v. *Quigg*, 641 F. Supp. 567, 570 (D.D.C. 1986); *see* Novo Nordisk's Memorandum of Points and Authorities in Support of its Motion Regarding Discovery and Admissibility of Evidence ("Novo's Memorandum"), at 4-8.

The PTO's Opposition seeks to expand greatly the second exception.  While ostensibly relying on *Hyatt* v. *Dudas*, No. 03-0901 (D.D.C. September 30, 2006), which erroneously created a presumption "excluding new evidence, absent a satisfactory explanation from the presenting party," *Hyatt*, at 4 (attached to Novo's Memorandum as Exhibit 4), the PTO's position extends this presumption well beyond any holding of *Hyatt*.  Absent any Federal Circuit authority, relying on *Killian* v. *Watson*,

121 U.S.P.Q. 507 (D.D.C. 1958),[1] the PTO asserts that "[w]here a § 145 plaintiff fails to provide any reason or explanation as to why it failed to present available evidence to the USPTO, a court is to presume that plaintiff's failure was gross negligence." Opposition, at 3. There is no such rule.

Of course it is correct that "new evidence is not always admitted in a § 145 action." Opposition, at 4. This "general principle," however, does not support any rule or presumption against admitting new evidence. Also irrelevant is the PTO's incorrect assertion that the Federal Circuit "has had the opportunity to comment on the *Killian* decision, but has not done so." Opposition, at 4. The *Killian* court recites no rule or presumption against the admissibility of evidence. As the *Killian* court formulated it, "[p]erhaps the most inclusive recent statements of the rule is that: 'New evidence may be received . . . where there has been no suppression, bad faith, or gross negligence on the

---

[1] The only authority the PTO offers for its presumption of gross negligence is *Killian*. Opposition, at 3. *Killian* does not, however, support the PTO. The plaintiff in *Killian* claimed to be the first to invent, that is, to have reduced the claimed invention to practice. 121 U.S.P.Q. at 507. This issue depended entirely on facts regarding the plaintiff's own actions, yet he never provided any evidence of those actions to the PTO to prove his claims during a patent prosecution that lasted more than four years, including reconsideration. *Id.* at 508. Furthermore, the plaintiff gave *no* explanation whatsoever of "his apparent refusal to offer, during this extended period in which the administrative decisions were *consistently* against him, the evidence which might have proved him right." *Id.* (emphasis added). On these facts, the D.C. District Court found the plaintiff to be "grossly negligent." *Id.*

part of the party offering it.'" (internal citation omitted).  The *Hyatt* court simply misread *Killian*.[2]

The "rule" for which the PTO advocates is also entirely unworkable.  It would require the applicant to predict all responses the PTO might make to its application and present all evidence that might pertain to any such response, regardless of whether an issue was actually raised.  Such a rule would enormously expand the proceedings in the

---

[2] The authorities previously cited by Novo, Memorandum, at 4-6, demonstrate the general rule that additional evidence is admissible in a Section 145 action.  Contrary to the PTO's assertion that *Mazzari* v. *Rogan* is distinguishable because the plaintiff there "specifically argued and presented evidence before the Board," Opposition, at 5, the plaintiff also presented new declarations from a new declarant to the court, as did the PTO.  323 F.3d 1000, 1003 (Fed. Cir. 2003).  *Fregeau* v. *Mossinghoff*, 776 F.2d 1034, 1036-37 (Fed. Cir. 1985) held that "the parties are entitled to submit additional evidence," in the form of supplements to declarations previously filed in the PTO.  Not only was this manifestly new evidence not before the PTO, it was also plainly available to the applicant and could have been provided in the earlier declarations by the same declarants.  Thus, *Fregeau* plainly contradicts the PTO's assertion that all potentially relevant information—including declarations—must be filed in the PTO.  In *Gould* v. *Quigg*, 822 F.2d 1074, 1077-78 (Fed. Cir. 1987), it is correct that the court focused on the relevance and weight of the expert testimony, as the PTO says, Opposition, at 5, but the expert testimony being weighed was new evidence, not before the PTO, and there was no question that it was admissible.  *Id.* at 1078.  Had the law been as the PTO claims, the Federal Circuit should have applied a presumption against its admissibility.  Instead, the court affirmed that "the parties are entitled to submit additional evidence."  *Id.* at 1076.  As to *Burlington Indus.* v. *Quigg*, 822 F.2d 1581, 1584 (Fed. Cir. 1987), the PTO is wrong in claiming that "the issue" was whether the district court could come to a different conclusion than the board in a § 145 action based on the same evidence, not new evidence.  Opposition, at 5.  "The issue" that the PTO refers to was actually the *third* issue addressed by the court, in Part C of the opinion, and the Federal Circuit roundly rejected the proposition that the PTO is "infallible," reaffirming that "[t]he *right* to a fresh look by a court of general jurisdiction, upon refusal by the Commissioner to grant a patent, has long been established."  *Id.* at 1584 (emphasis added).  The court also noted that the trial before the district court was of special value in reaching a correct result because it had "conducted a full trial of the issues, a resource not available to the PTO," *id.*, and had available to it new evidence, unrebutted at trial, that "successfully rebutted" the PTO's prima facie case of unpatentability for obviousness.  *Id.* at 1582.

PTO and increase the burden on both applicants and the PTO.[3]  If adopted, the rule would also erase the choice given by the patent statute between an administrative review on the record by direct appeal to the Federal Circuit under 35 U.S.C. § 141 or bringing a Section 145 action in the district court, in which the applicant is entitled to submit additional evidence.

### II.     Novo's Contemplated Evidence Is Admissible.

The PTO argues that any evidence proffered by Novo is inadmissible because Novo did not submit it to the PTO and is therefore grossly negligent. Opposition, at 6.  This is incorrect.  Novo's Memorandum identifies examples of specific evidence that pertains to matters raised for the first time by the Board in its decision, as well as the definition of one with ordinary skill in the art raised for the first time by the Examiner during the appeal (*see*, *infra*, p. 9).  Novo's Memorandum, at 8-10.  Novo, which was appealing the Examiner's grounds of rejection, could not have anticipated these matters, and thus could not reasonably have been expected to present such evidence in the PTO proceeding.

First, Novo did not withhold from the PTO evidence concerning the absorption of insulin into the bloodstream through inhalation.  The PTO goes to great lengths to demonstrate that the concept that medication may be aerosolized and administered by inhalation through the lungs to the bloodstream is not new.  Opposition, at 6-9.  Most inhalable medications, however, are developed to treat the lungs and are not intended to enter the bloodstream, and thus the administration of insulin to the

---

[3] It would also turn actions that are optional under the PTO's rules—such as submitting affidavits and declarations—into obligations.  *See* Opposition, at 9 (because PTO rules *permit* the offering of affidavits and declarations, Novo was grossly negligent in not doing so).

bloodstream involves complicated science and intensive research that has been ongoing for years. At the heart of the invention at issue is the ability to control the amount of insulin administered to a patient and the amount subsequently absorbed so as to treat diabetes in a safe and effective manner. Novo's claims included such a limitation, *e.g.*, "inhaling the aerosolized suspension . . . to allow the patient to absorb in the bloodstream a controlled dose of insulin."

The PTO missed the point. Unlike the Examiner, who clearly made findings with respect to the limitation, the Board made the sweeping assertion that all "medicament that is inhaled is absorbed into the blood stream by the lungs." Board Decision, at 4 (attached to Novo's Memorandum as Exhibit 2). This is incorrect, as described in more detail by Novo in its Memorandum, at 8, and was a different and additional basis for the Board's incorrect obviousness determination. Not only did the Board inappropriately substitute its assumption concerning asthma inhalers and pulmonary absorption of inhaled medicines for evidence of record, *see Brand* v. *Miller*, 487 F.3d 862, 870 (Fed. Cir. 2007), its erroneous new basis of rejection was one to which Novo has had no opportunity to respond. *See In re Waymouth*, 486 F.2d 1058, 1060-61 (C.C.P.A. 1973) ("Although the same phrase [of the patent application] . . . was questioned by both the examiner and the board, the bases of their rejections were wholly different, necessitating different responses by appellants."). Novo could not have anticipated this new ground of rejection.

Contrary to the PTO's assertion (Opposition, at 9), Novo was neither required nor expected to submit expert testimony to the Examiner, s*ee* Manual of Patent Examining Procedure ("MPEP") Patent Rule § 1.51 (setting out the requirements of an

application), nor could Novo have submitted affidavits and declarations under MPEP Patent Rule § 1.132 after the Examiner's final Office Action. *See id.* § 1.113(a) (after the final rejection, applicant's "reply is limited to appeal in the case of rejection of any claim . . . or to amendment").[4]  Indeed, given the presumed expertise of the PTO, Novo could not have anticipated that it needed to present expert testimony to the PTO to explain fundamental principles of aerosolization and pulmonary science. *Cf. McGinley* v. *Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001) (The PTO "includes one or more examiners who are assumed to have some expertise [in the relevant field] in interpreting the references and to be familiar from their work with the level of skill in the art.").

Second, Novo did not withhold evidence from the PTO concerning the claim limitation, *e.g.*, that "the aerosolized suspension contains an amount of insulin that is 2-10 times higher than the amount needed to be absorbed in the bloodstream of the patient." As set out by Novo in its Memorandum, at 9, the Examiner rejected claims with this limitation on the ground that it could be "arrived at through mere routine obvious experimentation and observation." Final Office Action, at 3 (attached to Novo's Memorandum as Exhibit 1). Novo challenged this rejection as legally insufficient, and the Board then adopted a new ground—not that the 2-10 times range could be determined by experimentation, but that the Velasquez patent teaches this range. Board Decision, at 4. Not only does Velasquez not teach this range (*see* Novo's Memorandum, at 9-10), but the Examiner's ground of rejection—that the range of insulin needed for the

---

[4] As the PTO admits, Novo was also not required to ask the Board for reconsideration. MPEP Patent Rule § 41.52(a)(1) ("Appellant *may* file a single request for rehearing.") (emphasis added). Novo has properly followed all of the relevant rules.

invention is obvious because it could be determined by experimentation—and the Board's alternative ground—that the range is obvious because it is explicitly taught in a prior art reference—are distinct rejections.  The latter does not "merely elaborate[] on the findings that the Examiner already made," as the PTO alleges (Opposition, at 10), but is a different and additional reason for rejecting the limitation as obvious.  As the Federal Circuit held in rejecting a similar argument in *In re Waymouth*, 486 F.2d at 1060-61, denying an applicant like Novo "an opportunity to provide a different and appropriate response to the board's rejection by saying that the board merely advanced 'an additional reason' for affirming the examiner begs the question and does not satisfy the administrative due process. . . ."

        The Board's new rejection did not, as the PTO now urges, "elaborate on what had already been found by the Examiner regarding what those of ordinary skill in the art knew about the respirable fraction."  Opposition, at 10 (emphasis in original omitted).  In fact, the Examiner never used the phrase "respirable fraction."  It was the Board that used the term, for the first time, in its decision.  It also defined the term incorrectly, stating that the "respirable fraction" of an aerosolized medicament is "[t]he fraction that will be absorbed relative to the total amount inhaled." Board Decision, at 4.  The Velasquez patent, on which the Board purported to rely, defines the respirable fraction as "the percentage of drug which is in particles of aerodynamic diameter of equal to or less than about 6.4μm." U.S. Patent No. 5,192,548, col. 5, ll. 11-13.  These are particles that are inhaled into the airways, and not absorbed into the bloodstream; thus the definitions differ substantially.

The Board improperly substituted its opinion for what was in the prior art it cited. *See Brand*, 487 F.3d at 870. Novo seeks to clarify this definition with expert testimony because, as the Board stated, "[w]e note that the phrase 'respirable fraction' is a term of art that may be pertinent in resolving any further patentability issues concerning the amount of a medicament needed to be inhaled to achieve appropriate absorption." Board Decision, at 6.

Third, the PTO argues that Novo was grossly negligent because it did not put forth evidence as to the level of ordinary skill in the art. Opposition, at 14. It is, however, the Examiner's, not the applicant's, burden to do so. MPEP § 2141(I.) ("Patent examiners carry the responsibility of making sure that the standard of patentability enunciated by the Supreme Court and by the Congress is applied in <u>each and every case</u>. . . . Office policy is to follow *Graham v. John Deere Co*. [383 U.S. 1 (1966)] in the consideration and determination of obviousness under 35 U.S.C. § 103 . . . [and make four background factual inquiries including] (C) Resolving the level of ordinary skill in the pertinent art.") (emphasis in original). The PTO conjectures that the Examiner implicitly found that one of ordinary skill in the art was a physician (Opposition, at 12), and that Novo should have responded to such an implicit finding. The Examiner did, however, *explicitly* offer a definition of one of ordinary skill in the art, although he waited to do so until he filed his brief before the Board. Examiner's Answer, at 7 (attached to the PTO's Opposition as Exhibit 5). Novo challenged the definition in its Reply (Reply Brief, at 4 (attached to the PTO's Opposition as Exhibit 7)), but it was long past the time Novo could submit supporting evidence. *See*, *supra*, p. 7. The Board did

not address this issue. It is therefore not "new" and Novo may introduce relevant evidence.

### III.     The Ruling the PTO Requests on the Admissibility of Specific Evidence To Be Offered by Novo Is Premature.

As requested by this Court, Novo has set out examples of the evidence it intends to offer at trial. Novo is in the process of working with its expert to determine just what information, in the form of expert testimony, is necessary for the Court's determination. As a result, Novo cannot now identify all of the evidence it may seek to admit. The PTO's request that this Court determine as a matter of law that Novo was grossly negligent in prosecuting its patent application, and on that basis exclude all of Novo's evidence, is unwarranted and insupportable. In any event, when evidence is proffered at the proper time in this action, the Court will be in a better position to rule on its admissibility.

## CONCLUSION

Novo respectfully requests that its motion be granted.

Respectfully submitted,

/s/
Margaret K. Pfeiffer  (D.C. Bar No. 358723)
Susan Kaufmann Nash  (D.C. Bar No. 484088)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805
Tel.:  (202) 956-7500
Fax:  (202) 956-6330

Counsel for Plaintiff Novo Nordisk A/S

OF COUNSEL:

Robert Schaffer
Samuel S. Woodley
DARBY & DARBY P.C.
805 Third Avenue
New York, New York 10022
Tel.:  (212) 527-7700
Fax:  (212) 527-7701

Dated:  August 24, 2007